UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAVELLE MALONE,

    Plaintiff,

    v.                                                        CAUSE NO. 3:25-CV-024 DRL-SJF

DANIELLE HAMLIN, KLEIN,
CENTURION HEALTH LLC,

    Defendants.

OPINION AND ORDER

Lavelle Malone, a prisoner without a lawyer, filed a complaint. ECF 1. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Malone is proceeding without counsel, his allegations must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Malone, who is confined at the Miami Correctional Facility, alleges he had a severe allergic reaction in the early morning hours of September 22, 2024. He claims Nurse Practitioner Danielle Hamlin changed his blood pressure medication from

amlodipine besylate—which he had been on "for years, with no problems"—to lisinopril. ECF 1 at 2. He believes he was "being experimented on, to save money." *Id*. When the allergic reaction began, Nurse Klein administered 50mg of Benadryl to counter the anaphylaxis. Mr. Malone faults her for not immediately administering "IV Benadryl." *Id*. However, he admits he was subsequently taken to an outside hospital's emergency room where he received "an intravenous Benadryl drip, to counteract the reaction." *Id*. at 3. Mr. Malone claims the alleged indifference to his health and safety is a "custom, pattern, or common practice with my defendants; and the corporate health care provider, Centurion." *Id*. Mr. Malone states, "Prisoners' health takes a backseat to saving money." *Id*. He has sued NP Hamlin, Nurse Klein, and Centurion Health, LLC for monetary damages.

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show (1) his medical need was objectively serious, and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the court of appeals has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing

3

standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and quotations omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness," *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly when the delay "exacerbates the plaintiff's condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotations omitted).

For purposes of this screening order, it may be presumed that Mr. Malone has a serious medical condition—namely, high blood pressure requiring medication to control it. The question is whether he has plausibly alleged the defendants were deliberately indifferent to that need. With regard to NP Hamlin, he alleges she changed his blood pressure medication as an "experiment" and to save money. Even if both of those assertions are true, Mr. Malone hasn't plausibly alleged NP Hamlin violated the Constitution. It's not reasonable to infer she had preexisting knowledge he was allergic to the lisinopril or that it was otherwise contraindicated for his condition.[1] He also doesn't allege he was forced to remain on the lisinopril after it was determined he was allergic to it or that he failed to receive different blood pressure medication following the incident. There is not a sole "proper way" to practice medicine in a prison setting, nor is Mr.

---

[1] In fact, in a grievance attached to the complaint, Mr. Malone states that NP Hamlin "told me she prescribed lisinopril because my blood pressure stayed high" on the amlodipine. ECF 1-1 at 1.

4

Malone entitled to demand specific treatment or specific medications. *See Jackson*, 541 F.3d at 697–98; *Walker*, 940 F.3d at 965; *see also Types of Blood Pressure Medications*, American Heart Association, https://www.heart.org/en/health-topics/high-blood-pressure/changes-you-can-make-to-manage-high-blood-pressure/types-of-blood-pressure-medications# (last visited Nov. 13, 2025) (lisinopril is an angiotensin converting enzyme (ACE) inhibitor while amlodipine is a calcium channel blocker; both are commonly prescribed to treat high blood pressure). Accordingly, Mr. Malone has failed to state any plausible claims against NP Hamlin.

Mr. Malone has also sued Centurion, a private company contracted with the Indiana Department of Correction to provide medical care to inmates housed at the Miami Correctional Facility. There is no *respondeat superior* liability under 42 U.S.C. § 1983, and a private company can't be held liable for damages simply because it employed a medical professional who engaged in wrongdoing. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but only if the "unconstitutional acts of their employees . . . were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). To allege a viable *Monell* policy claim, the plaintiff must identify an official policy that caused him injury. *Grieveson*, 538 F.3d at 771. Alternatively, a plaintiff pursuing an official custom or practice

theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Here, Mr. Malone alleges Centurion has a custom or practice of letting the health of prisoners take a "backseat to saving money" by experimenting with medication changes. ECF 1 at 3. Under the law, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id*. Mr. Malone speculates his medication was changed due to cost, but he provides no details to support this contention. In fact, his own grievance about the matter states NP Hamlin told him she prescribed the lisinopril because his blood pressure "stayed high" on the amlodipine. ECF 1-1 at 1. According to the American Heart Association, lisinopril and amlodipine are both widely-available, widely-prescribed generic medications used to treat high blood pressure. Mr. Malone's unsupported conjecture about cost savings—involving the actions of one medical professional switching the medication temporarily for one inmate—doesn't support a *Monell* claim against Centurion. *See Elyea*, 631 F.3d at 863; *see also Bell Atlantic Corp*, 550 U.S. at 570 (A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper

that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.").

Finally, Mr. Malone sues Nurse Klein for failing to administer IV Benadryl at the first signs of his allergy attack. Again, there is not a sole "proper way" to practice medicine in a prison setting, nor is Mr. Malone entitled to demand specific treatment. *See Jackson*, 541 F.3d at 697–98; *Walker*, 940 F.3d at 965. He admits Nurse Klein administered 50mg of Benadryl in pill form to counteract the symptoms before he was then taken to an outside hospital. The grievance he attaches to his complaint provides additional details. When Mr. Malone first reported the allergy symptoms to a guard at approximately 3:00-3:15 AM on September 22, 2024, he said only that his "bottom lip and face was swollen." ECF 1-1 at 1. He admits he was subsequently taken to medical where he was examined by Nurse Klein. She "made a phone call to her supervisor Nurse Practitioner Kim Myers so nurse Klein gave me two (2) Benadryl which she instructed me to take with water then she told me to return to my LHU." *Id*. Mr. Malone slept for a bit before waking up to discover his "lips and face were swollen worser (sic)." *Id*. The guards then escorted him to medical for the second time at around 4:45 AM. When Nurse Klein saw his condition had worsened, she "call[ed] for an ambulance to have me transported to an outside hospital to treat my serious allergic reaction." *Id*. Thus, according to Mr. Malone's own allegations, Nurse Klein was presumably following the directives of NP Myers regarding the administration of Benadryl; and, regardless, it was arranged that he be taken to an outside hospital for treatment less than two hours after he reported his initial symptoms. Based on these facts, it simply can't be inferred that Nurse Klein was deliberately

7

indifferent to his medical needs. *See, e.g., Walker*, 940 F.3d at 965 (inmates may not demand specific care and deference is given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances").

This complaint fails to state a claim for which relief can be granted. Although it appears unlikely Mr. Malone can state a plausible claim based on (and consistent with) the events described in this complaint, he may file an amended complaint if he chooses because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form. He must remember that, by signing the amended complaint, he "declare[s] **under penalty of perjury** that the statements in this complaint are true." *See, e.g.*, ECF 1 at 4 (bold and underlining in original).

For these reasons, the court:

(1) GRANTS Lavelle Malone until **December 18, 2025** to file an amended complaint; and

(2) CAUTIONS Lavelle Malone if he doesn't respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint fails to state a claim for which relief can be granted.

8

SO ORDERED.

November 17, 2025                                     *s/ Damon R. Leichty*
                                                      Judge, United States District Court